GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

DAN G. BOYLE (N.Y. Bar No. 5216825, daniel.boyle2@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone (213) 894-2426

KENNETH POLITE
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (D.C. Bar No. 1620183, reginald.jones4@usdoj.gov)
Senior Trial Attorney
Criminal Division, U.S. Department of Justice
1400 New York Ave N.W., Suite 1200
Washington, D.C. 20005
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Backpage.com LLC, et al.,<br><br>Defendants.<br><br>---<br><br>Michael Lacey, et al.,<br><br>Petitioners. | No. CR-18-465-DJH<br><br>**UNITED STATES' STATUS REPORT REGARDING ANCILLARY PROCEEDINGS** |

**INTRODUCTION**

The United States files this this status report in advance of the presently-scheduled January 11, 2022 status conference in order to provide background on the status of these parallel ancillary proceedings, and to identify three issues to be raised with the Court.

In 2018, Backpage.com LLC, its affiliates, and its then-CEO pled guilty to participation in a broad money laundering conspiracy. Pursuant to their plea agreements, these defendants agreed to forfeit the bulk of Backpage's assets, which could then be used to satisfy a $500 million restitution order to persons victimized through Backpage's operations. Beginning on June 29, 2018, certain of Backpage's former owners, officers, and employees, who are all defendants in the parallel criminal action, *United Sates v. Lacey, et al.*, CR-18-224-DJH (the "*Lacey* Action"), filed petitions seeking an ancillary proceeding to determine ownership of Backpage's forfeited assets. Since 2018, the government and these petitioners have repeatedly stipulated to continue the ancillary proceeding in this action based on the petitioners' pending criminal trial.

In late 2021, however, the *Lacey* defendants moved to release millions of dollars to fund their criminal defense without acknowledging that Backpage had already agreed to forfeit much of the money they sought, which was the subject of the long-continued ancillary proceedings here. On December 12, 2021, the Court denied the motion to release funds, but did so without prejudice to be re-filed.

While the United States was previously willing to accommodate the *Lacey* defendants by continuing the ancillary proceedings here pending their pending criminal trial, a total standstill of these proceedings is no longer appropriate when the *Lacey* defendants are seeking to release assets subject to forfeiture here without meeting their burden in the ancillary proceeding. For this reason, at the upcoming status conference, the United States will request that the Court: (1) set a briefing schedule on a motion to dismiss the petitions here; (2) permit standing discovery to be served on certain of the petitioners; and (3) resolve one outstanding motion to withdraw certain petitions.

## RELEVANT BACKGROUND

### A. Backpage & Ferrer's Guilty Pleas and Forfeitures

On April 5, 2018, Backpage.com, LLC and several affiliates (collectively "Backpage") pled guilty to informations charging each with money laundering conspiracies and admitting that Backpage "derived the great majority of its revenue from fees charged in return for publishing advertisements for 'adult' and 'escort' services," that "[t]he great majority of these advertisements [were], in fact, advertisements for prostitution services," and that after "banks, credit card companies, and other financial institutions refused to do business with Backpage," the company "found ways to fool credit card companies into believing that Backpage-associated charges were being incurred on different websites, to route Backpage-related payments and proceeds through bank accounts held in the name of seemingly unconnected entities." *See, e.g.,* Doc. 8-1 at 11-12.

On the same date, in *United States v. Ferrer*, CR-18-464, Backpage's then-CEO, Carl Ferrer, pled guilty to a money laundering and Travel Act conspiracy, admitting a largely-similar factual basis, and agreed to cooperate with the government. *See* CR-18-464, Doc. 7-1, at 12-14 (collectively with CR-18-465, the "Backpage Actions"). Both Backpage and Ferrer agreed to pay $500 million in restitution to victims harmed by Backpage (including, for example, victims trafficked on the Backpage.com website), and in furtherance of this restitution, agreed to forfeit a broad range of assets traceable to or involved in their crimes. *See* Doc. 8-2 at 6-8; *see also* CR-18-464, Doc. 7-1 at 7-9.

On May 16, 2012, the Court signed Preliminary Orders of Forfeiture ("POFs") in the Backpage Actions (Doc. 22; *see also* CR-18-464, Doc. 23), and on October 18, 2018, the Court signed a stipulated Amended POF addressing certain additional assets. *See* Doc. 44. While the full list of assets identified in the POFs is lengthy, in brief summary, Backpage and Ferrer agreed to forfeit a substantial amount of cryptocurrency, one parcel of real property (as addressed further herein), certain internet domain names and trademarks, and the contents of numerous bank accounts and security deposits (collectively the "Forfeitable Assets"). The Forfeitable Assets included approximately $15 million in

funds held in Interest on Lawyers Trust Accounts funded by Backpage (the "IOLTA Funds"). *See* Docs. 22, 44. The total value of the Forfeitable Assets as of the date of the POFs was estimated to be at least $56 million.

**B. The Petitions**

On June 29, 2018, Michael Lacey, James Larkin, Scott Spear, Jed Brunst, Andrew Padilla, and Joye Vaught, all defendants in the *Lacey* Action ("Defendant-Petitioners"), filed petitions in the Backpage Actions claiming a superior interest in virtually all of the Forfeitable Assets. *See* Appendix A (compilation of petitions and docket cites).

Each of these petitions alleged a largely-identical factual basis for each Defendant-Petitioner's interest:

> Petitioner holds an ownership interest in an entity that, directly or indirectly, has held enforceable first-priority security interests in the Subject Assets since on or about April 22, 2015. The entity(ies) acquired the interests in exchange for a loan extended by that entity to Atlantische Bedrijven C.V. and UGC Tech Group C.V. in or about April 2015. Petitioner also has the right to advancement and indemnification from Atlantische Bedrijven C.V. and UGC Tech Group C.V. pursuant to the loan agreements and related purchase agreements, which advancement and indemnification obligations are also secured by the first-priority security interests in the Subject Assets. The Subject Assets do not contain or constitute criminal proceeds. Petitioner's interest in the Subject Assets precedes the government's purported interest in the Subject Assets. Petitioner also acquired his interest in the Subject Assets as a bona fide purchaser for value. Therefore, Petitioner's interest in the Subject Assets is superior to the government's purported interest.

*See, e.g.,* Doc. 28 (Lacey Petition), at 22.[1]

[1] Defendant-Petitioners Vaught and Padilla's petitions differ in that neither asserts any ownership interest in any entities, but are otherwise substantively identical to those of the other Defendant-Petitioners.

In addition to those petitions filed by Defendant-Petitioners, six entities controlled by certain of Defendant-Petitioners also filed petitions ("Entity-Petitioners"). *See* Appendix A. Entity-Petitioners alleged, in substance, that one or more of Entity-Petitioners' affiliates had entered "purchase agreements, loan agreements, and promissory notes" secured by all of Backpage's assets, that "[o]n information and belief, financing statements were filed with the Delaware Secretary of State, the Recorder of Deeds in the District of Columbia, and the Texas Secretary of State in April 2015 to perfect security interests in the collateral," and that these assets were "general intangibles encumbered by the security agreements and the liens on the Subject Assets were perfected by the filing of the financing statements." *See, e.g.*, Doc. 67 (Camarillo IOLTA Petition), at 3-4.

Hearings on the petitions were repeatedly continued by stipulation, in order to coincide with Defendant-Petitioners' criminal trial. *See* Docs. 104, 109, 111, 115, 118.

### C. The *Lacey* Action and the Funds Motion

On March 28, 2018, a grand jury in this District returned an indictment charging Defendant-Petitioners and others with knowingly facilitating prostitution and engaging in money laundering, and in July of 2018, the grand jury issued a Superseding Indictment. *See United States v. Lacey, et al.*, Case No. CR-18-422, Doc. 230.

On October 26, 2021, certain of Defendant-Petitioners moved this Court to release millions of dollars in seized assets, purportedly to fund their criminal defense. *See Lacey* Act., Doc. 1366 (the "Funds Motion"). The Funds Motion sought release of four subsets of assets, which included "[o]ver $10 Million" in funds seized from attorney trust accounts (the IOLTA Funds, described above). On December 10, 2021, this Court denied the Funds Motion, without prejudice to be refiled if Defendant-Petitioners first made a *prima facie* showing that their net financial resources and income were insufficient to pay their counsel. *See Lacey* Act., Doc. 1438 (the "December 12 Order"), at 16.

As of the date of this Status Report, Defendant-Petitioners have not sought to refile their Funds Motion.

**RELEVANT LAW**

Forfeiture in a criminal action is governed by Federal Rule of Criminal Procedure 32.2. Upon a determination that property is subject to forfeiture, a court must enter a Preliminary Order of Forfeiture "without regard to any third party's interest in the property," as the determination of any potential third-party interest in property "must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)." Rule 32.2(b)(2). Where a third party asserts an interest in the subject property, the court must hold an ancillary proceeding to determine the ownership of the property, as set forth in 21 U.S.C. § 853(n). *See* Rule 32.2.(c); *see also* Stefan D. Cassella, *Asset Forfeiture Law in the United States* (2d ed. 2013), § 23-2 ("Cassella") ("[T]he one and only purpose of the ancillary proceeding is to determine the ownership of the property"). At the ancillary proceeding, the burden is on the third party to establish either that (1) the third party had a preexisting interest in the subject property superior to the convicted defendant, or (2) was an innocent owner of the property. *See* 21 U.S.C. § 853(n)(6)(A-B).

In the ancillary proceeding, a petitioning third party must first establish standing to assert any purported ownership interest. *See* Rule 32.2(c)(1)(A) ("In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason. For purposes of the motion, the facts set forth in the petition are assumed to be true."). Standing is a petitioner's burden, and "[a] petition must set forth the legal basis and all grounds for the third-party's claimed interest in the property, and the third-party may not later amend the petition to assert additional grounds for relief." *United States v. Dupree*, 919 F. Supp. 2d 254, 263 (E.D.N.Y. 2013), *aff'd in part, vacated in part sub nom. United States v. Watts*, 786 F.3d 152 (2d Cir. 2015). A petition must set forth "enough facts to state a claim to relief that is plausible on its face to survive dismissal." *Willis Mgmt. Ltd. v. United States*, 652 F.3d 236, 241-42 (2d Cir. 2011) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must assume that facts alleged in a petition are true, the court is not required to credit legal conclusions. *See United States v. Madoff*, No. 09-CR-213-DC, 2012 WL 1142292, at

*3 (S.D.N.Y. Apr. 3, 2012).

With respect to standing, "[w]hen a claim is filed in the ancillary proceeding, the court looks to the law of the jurisdiction that created the claimant's property interest to see what interest the claimant has in the property, and then looks to federal law to see if that interest is sufficient to exempt the property from forfeiture under the federal forfeiture statute." Cassela, § 23-12(a). In short, first the Court looks to state law to determine the existence of any purported interest, and then looks to federal law to assess its sufficiency. *See id*., at § 23-12(b-c); *United States v. Nava*, 404 F.3d 1119, 1128–29 (9th Cir. 2005) ("Federal forfeiture statutes govern the disposition of property, but state law determines what rights, title or interests the various claimants possess in that property").

Finally, unsecured creditors do not have standing to challenge forfeiture of a debtors' property, although creditors who have properly secured their interests may have standing. *See United States v. $20,193.39 U.S. Currency*, 16 F.3d 344, 346 (9th Cir. 1994); *see also Madoff*, 2012 WL 1142292, at *4 ("To have a claim in the specific property, a creditor, therefore, must secure a judgment or perfect a lien against a particular item").

## DISCUSSION & STATUS UPDATE

The United States respectfully seeks to raise the following items at the January 11, 2022 status conference:[2]

1. Request for a Briefing Schedule on A Motion to Dismiss the Petitions on Standing Grounds

As the Court noted in its December 12 Order denying the Funds Motion, "it is unclear to the Court at this point what ownership rights Defendants have with regard to the four categories of funds identified in their Motion. … If Backpage or Ferrer has superior rights to the seized assets and has stipulated to their forfeiture, then Defendants have no grounds at all to seek their release." *Lacey* Act., Doc. 1438 at 11, n.6. The Court's observation is entirely accurate: Defendant-Petitioners cannot seek to release and spend

[2] Should the Court decide *sua sponte* to continue the status conference, the United States respectfully requests that the Court instead address these matters in a minute order.

funds identified in the POFs without first meeting the standards in 21 U.S.C. § 853(n)(6). And as a threshold issue, Defendant-Petitioners must first sufficiently allege standing to contest forfeiture of the Forfeitable Assets, which their current petitions simply fail to do. As briefly explained below, Defendant-Petitioners' barely three-sentences of factual allegations fail to meet even the low bar of the *Twombly/Iqbal* standard, and more importantly, appear to be asserting standing as shareholders in unidentified corporate entities (presumably, Entity-Petitioners), or alternately, suggesting that they have interests secured by other, unidentified third parties (again, apparently Entity-Petitioners).

*a. Defendant-Petitioners Fail to Meet the Twombly/Iqbal Standard*

Once stripped of legal argument (which the Court need not credit at this stage), Defendant-Petitioners' petitions allege just three sentences of purported facts. They do not identify what purported entities provide the basis for their purported interest in the Forfeitable Assets, do not identify what state law governs their purported interests, do not identify the amount of any purported loans, and do not identify who purportedly secured any alleged interest in the Forfeitable Assets (or if they personally secured these interests at all). Neither do the petitions provide any facts about the purported advancement and indemnification obligations asserted, such as the amount of these obligations or when they were first asserted or invoked. None of Defendant-Petitioners attach any purported agreements, loans, or security documents to their petitions. *See United States v. Hassan*, 411 F. Supp. 3d 1302, 1308 (M.D. Fla. 2019) ("To survive dismissal, 'a third-party petitioner must offer enough detail about the nature and extent of his interest and the time and circumstances of his acquisition of that interest to allow the Court to determine whether the petition merits a hearing.'"); *cf. United States v. BCCI Holdings (Luxembourg) S.A.*, 69 F. Supp. 2d 36, 55 (D.D.C. 1999) (collecting cases where petitions dismissed for failure to describe the nature of claimant's interest as required by statute).

*b. Defendant-Petitioners Are Attempting to Assert Shareholder Standing*

What little Defendant-Petitioners have alleged strongly suggests that they are attempting to assert standing based on their ownership or control of unidentified corporate

entities. Even without knowing what state law would govern Defendant-Petitioners' purported interests, general principles of corporate law and binding Ninth Circuit precedent hold that the shareholders lack standing to contest forfeiture on a corporation's behalf.

As noted above, certain of Defendant-Petitioners explicitly state that they "hold[] an ownership interest in an entity that, directly or indirectly, has held enforceable first-priority security interests in the Subject Assets" and that pursuant to agreements these unnamed entities are party to, Defendant-Petitioners are entitled to indemnification obligations. This assertion of standing, however, is squarely foreclosed by binding precedent, which the Ninth Circuit recognized in *U.S. v. Aguilar*. 782 F.3d 1101, 1108 (9th Cir. 2015); *see also United States v. Boscarino*, CR 10-1942-TUC-CKJ, 2013 WL 1833018, at *2 (D. Ariz. Apr. 30, 2013) ("[C]orporate property is vested in the corporation rather than in the stockholders. In other words, M. Boscarino does not have an individual interest in the assets held in the bank accounts. The Court finds M. Boscarino does not have standing to assert any interest in the bank accounts." (internal citation omitted)). Entity-Petitioners have already filed petitions,[3] and Defendant-Petitioners cannot piggy-back their standing on corporate entities which appear fully-capable of appearing and advancing their own purported interests.

2. <u>Request for Standing Discovery & Timing of Ancillary Proceedings</u>

As stated above, the United States does not believe that any of the Petitioners have sufficiently alleged standing at the present time, but assuming *arguendo* that at least one of Entity-Petitioners is the affiliate or entity described in their petitions, the United States requests permission to serve limited standing discovery on Entity-Petitioners, targeted solely at clarifying these standing questions. *See* Cassela, § 23-7 ("Rule 32.2(c)(1)(B) provides that the court may permit the parties to conduct discovery in the ancillary

[3] Entity-Petitioners have alleged more facts than Defendant-Petitioners, but their petitions still vaguely assert that affiliates of Entity-Petitioners engaged in the transactions described, often on information and belief. As described below, however, because of the state law questions involved, the United States submits that limited discovery is the most efficient means of assessing Entity-Petitioners' standing. In contrast, Defendant-Petitioners do not even suggest what law might govern their purported interests.

proceeding in accordance with the Federal Rules of Civil Procedure 'if the court determines that discovery is necessary or desirable to resolve factual issues.'" (*quoting* Rule 32.2)). While discovery is not automatic in an ancillary proceeding, the United States submits that limited discovery as to Entity-Petitioners' alleged standing here may resolve these proceedings expeditiously.

The Ninth Circuit has long recognized that general creditors and secured creditors are treated very differently in ancillary proceedings, and as such, the existence and validity of any purported secured interest is a critical threshold question. *See $20,193.39*, 16 F.3d at 346 ("Unlike secured creditors, general creditors cannot claim an interest in any particular asset that makes up the debtor's estate."); *see also Cassela*, § 23-12(b) ("A court will look to state commercial law to determine if the defendant's creditors have properly recorded liens against the forfeited property"). Here, Entity-Petitioners' have each alleged that affiliates of Entity-Petitioners engaged in transaction(s) with Backpage, and that their contractual interests were secured in a variety of jurisdictions by way of filing financing statements. *Compare* Doc. 67 (Camarillo IOLTA petition), at 4 ("On information and belief, financing statements were filed with the Delaware Secretary of State, the Recorder of Deeds in the District of Columbia, and the Texas Secretary of State in April 2015 to perfect security interests in the collateral."); *with* 6 Del.C. § 9-314(b) ("A security interest in deposit accounts, electronic chattel paper, letter-of-credit rights, or electronic documents is perfected by control … when the secured party obtains control and remains perfected by control only while the secured party retains control."). Because state law will govern whether these interests were properly secured, and because it will be Entity-Petitioners' burden to establish as such, limited discovery as to Entity-Petitioners' purported secured interests has the potential to resolve their petitions relatively efficiently.

Separate from this limited standing and discovery issues addressed above, however, the United States recognizes that judicial efficiency will likely be best served by staying any other discovery in the ancillary proceedings until the conclusion of Defendant-Petitioners' criminal trial. This is because the United States expects that the core of

Defendant-Petitioners' argument will be that they are bona-fide purchasers for value pursuant to 21 U.S.C. §853(n)(6)(B). As such, Defendant-Petitioners will bear the burden of showing that they were reasonably "without cause to believe that the property was subject to forfeiture" – *i.e.*, that they were unaware of the conspiracies which Backpage and Ferrer have admitted to. Because this issue is expected to be part of Defendant-Petitioners' criminal trial, where Ferrer is expected to testify for the United States, the government submits that conducting discovery outside the limited issue of standing would largely retread issues which are expected to be addressed at trial.

3. <u>The Stipulated Resolution of April Ferrer's Petition</u>

On January 11, 2019, April Ferrer, the former spouse of defendant Ferrer, filed a petition in Case No. CR-18-464, at Doc. 58. On November 22, 2021 April Ferrer and the United States reached a stipulated agreement resolving April Ferrer's petition (Doc. 114), which stated, in substance, that the United States would not seek forfeiture of a residence in The Colony, Texas (the "Residence") which petitioner Ferrer was seeking in her divorce from defendant Ferrer, and in return, petitioner Ferrer would withdraw her petition as to any other assts forfeited by defendant Ferrer. Petitioner Ferrer's motion to withdraw her petition has yet to be addressed, as it was filed shortly after the Backpage Actions were reassigned to Your Honor.

## CONCLUSION

The United States respectfully requests that the Court address the above-described issues at the January 11, 2022, Status Conference.

Respectfully submitted this 5th day of January, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

*/Dan G. Boyle*
DAN G. BOYLE
Special Assistant U.S. Attorney

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
Assistant U.S. Attorneys

KENNETH POLITE
Assistant Attorney General
U.S. Department of Justice
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division

## APPENDIX A

| CR-18-464 (Ferrer) | | CR-18-465 (Backpage) | |
|---|---|---|---|
| **Document** | **Petitioner** | **Document** | **Petitioner** |
| 29 | Lacey | 28 | Lacey |
| 30 | Padilla | 29 | Padilla |
| 31 | Vaught | 30 | Vaught |
| 32 | Larkin | 31 | Larkin |
| 33 | Spear | 32 | Spear |
| 34 | Brunst | 33 | Brunst |
| 36 | Shearwater Holdings LLC | 35 | Shearwater Holdings LLC |
| 37 | Medalist Holdings Inc. | 36 | Leeward Holdings LLC |
| 38 | Vermillion Holdings LLC | 37 | Camarillo Holdings LLC |
| 39 | Cereus Properties LLC | 38 | Cereus Properties LLC |
| 40 | Camarillo Holdings LLC | 39 | Vermillion Holdings LLC |
| 41 | Leeward Holdings LLC | 40 | Medalist Holdings Inc. |
| | | 61 | Lacey (IOLTAs) |
| | | 62 | Larkin (IOLTAs) |
| | | 64 | Brunst (IOLTAs) |
| | | 65 | Medalist (IOLTAs) |
| | | 66 | Leeward (IOLTAs) |
| | | 67 | Camarillo (IOLTAs) |
| | | 68 | Vermillion (IOLTAs) |
| | | 69 | Cereus (IOLTAs) |
| | | 70 | Shearwater (IOLTAs) |
| | | 71 | Padilla (IOLTAs) |
| | | 72 | Vaught (IOLTAs) |
| | | 73 | Spear (IOLTAs) |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/Zachry Stoebe*
U.S. Attorney's Office